STATE, FOR USE OF THOMPSON *v.* CLOUD *et al.*[*]

(Division B. April 16, 1928. Suggestion of Error Overruled May 21, 1928.)

[116 So. 814. No. 27081.]

*Corpus Juris-Cyc. References: Damages, 17CJ, p. 1011, n. 23; Negligence, 29Cyc, p. 521, n. 46; New Trial, 29Cyc, p. 849, n. 27; Sheriffs and Constables, 35Cyc, p. 1612, n. 80; As to care required of one in sudden emergency, see 37 L. R. A. (N. S.) 43; 20 R. C. L. 134; 3 R. C. L. Supp. 1037; 4 R. C. L. Supp. 1338; 6 R. C. L. Supp. 1193; 7 R. C. L. Supp. 668.

See, also, 146 Miss. 642, 112 So. 19.

*H. B. Greaves, M. S. McNeil* and *C. N. Floyd,* for appellant.

*W. H. & R. H. Powell* and *Wilson & Henley,* for appellees.

Argued orally by *M. S. McNeil* and *H. B. Greaves,* for appellant, and *W. H. Powell* and *W. S. Henley,* for appellee.

ANDERSON, J. The state, for the use of Crisler Thompson, brought this action in the circuit court of Copiah county against M. M. Cloud, sheriff of Madison county, and the United States Fidelity & Guaranty Company, surety on his official bond as such sheriff, to recover damages from the appellee and such surety for a tort alleged to have been committed by appellee against appellant while acting under color of his office as such

sheriff which tort it was alleged, constituted a breach of appellee's official bond. There was a trial resulting in verdict and judgment in favor of appellant in the sum of five hundred dollars. From that judgment, appellant prosecutes this appeal.

The only error assigned and argued by appellant was the action of the court in overruling appellant's motion for a new trial, based alone upon the alleged inadequacy of the damages awarded him by the jury.

Appellant's evidence tended to make the following case: Appellee was sheriff of Madison county, and Black, Chandler, and Hobson were his duly constituted deputies. As such sheriff, appellee procured a search warrant authorizing him and his deputies to search the premises of appellant's brother-in-law, Gus Griffin, situated in Madison county, for intoxicating liquors. Thereupon appellee, accompanied by the three deputies named, went to the barn of Gus Griffin, and secreted themselves thereabouts. They were all armed with deadly weapons. Appellee instructed his deputies to remain there secreted to await the arrival of an automobile which was supposed to contain intoxicating liquors, and, when such automobile arrived, to seize the same with any intoxicating liquors therein, and arrest the occupants of the automobile. Appellee then returned to his home in Canton, the county seat of Madison county. While the deputies were thus secreted upon the premises of Gus Griffin, the appellant and his companion, Hendricks, in an automobile, drove up to Griffin's barn and under the shed attached to the barn. In the car in which they were driving there were a bird dog, a sack of butter beans, and a well auger. After driving under the shed of the barn and stopping there, appellant and Hendricks got out of their car onto the ground, and, while appellant was endeavoring to remove the bird dog from the back seat of the car, the sack of butter beans fell out of the car onto the ground. Appellant requested Hendricks to pick up the

sack of butter beans, which Hendricks proceeded to do. As Hendricks stooped over to pick up the sack, a flash-light in the hands of one of appellee's said deputies, who had come out of his hiding, was turned on appellant and Hendricks in such manner as to bring both of them within the rays of the light and expose them to the full view of the deputies. Thereupon, without warning to either the appellant or Hendricks of their purpose, and while the latter was in a stooping posture picking up the sack of butter beans, one of the deputies shot Hendricks in the back with a shotgun, the shot causing Hendricks to fall to the ground, mortally wounded, and, while in that position, two or three other shots were fired into Hendricks' prostrate body by one of the other deputies, all the shots taking effect in Hendricks' back.

The appellant was frightened by the shooting, and backed away from the car, and, while so backing, he thought the deputies were pursuing him, and threw up both his hands with his face turned toward them, and cried: "My God! I have got up my hands, don't shoot me!" When this occurred, the flash-light in the hands of one of the deputies was full upon appellant, revealing to the deputies his form with his hands up. Notwithstanding this fact, the appellant was shot by one of the deputies, the load taking effect in one of his upturned hands and in his throat. His entire palm was shot out, taking away all of the fingers on that hand except his thumb and little finger. In addition, appellant received a serious wound in his throat. After appellant was shot, he fled, and, while fleeing, was shot at with a shotgun by one of the deputies when about fifty yards away. This shot hit him in the back, but failed to penetrate the skin and cause any wound. The appellant and Hendricks were unarmed, and had no intoxicating liquor either in the car in which they came or about their persons. Appellee had no warrant for the arrest of either the appellant or Hendricks, but had, as stated, a search war-

rant for the search of the premises of Gus Griffin for intoxicating liquors, with authority in the search warrant to make arrests, in case such liquors were found as a result of the search.

The appellee defended upon the ground that his deputies shot Hendricks in self-defense, and, in doing so, appellant ran in the range of one of the shots aimed at Hendricks, which caused appellant's wounds in his hand and throat.

There was no dispute in the evidence that appellee's deputies undertook to arrest appellant and his companion, Hendricks, without any attempt to serve the search warrant in their possession.

Appellee's deputies, Black, Chandler, and Hobson, testified that, when they called upon appellant and Hendricks to submit to arrest, the latter drew from his hip pocket what afterwards developed to be a bottle, which he threw against some object and broke; that, when the bottle was thus drawn, it had the appearance of a pistol, and that they believed, and had good reason to believe, that Hendricks intended to use same against them. In other words, that they believed, and had good reason to believe, that Hendricks, when he drew this bottle, was drawing a pistol with the intention of taking their lives, or doing them some great bodily harm, and for that reason Hendricks was shot, and that, while he was being shot, the appellant ran in the range of the shots, and received the wounds in his hand and throat, and that they had no purpose to shoot appellant.

The evidence shows that great physical and mental suffering resulted to appellant from the wounds received in his hand and throat. There was no evidence showing that appellant suffered, either mentally or physically, from the shot in the back by a shotgun while he was fleeing, which caused no wound; that, in fact, he did not know that he had received such a shot until afterwards.

Appellant's position is that the verdict of the jury was so inadequate as to evince passion or prejudice on their part in assessing appellant's damages.

Appellee undertakes to answer appellant's contentions as follows:

(1) That the evidence shows that the first injury, the wound in the hand and throat, was caused by appellant's contributory negligence in getting in the range of the shot intended for Hendricks; that therefore the jury were warranted in diminishing appellant's damages in proportion to such contributory negligence.

(2) That the appellant sought recovery for two distinct injuries, namely, the wound in the hand and throat, and also the shot that hit him in the back as he fled, and the court cannot say from the record for which of the two injuries the jury rendered their verdict, and, if the verdict was based on the minor injury, the shot in the back, which caused no wound, the damages awarded were adequate; but, if it cannot be determined from the record on which injury the verdict was based, and the damages are inadequate for the greater injury, then the verdict should be justified by the court in assuming that the jury based its verdict on the minor injury; and, if mistaken in this, and the judgment should be reversed, then the cause should go back for trial both on the question of liability and on the question of damages.

(3) That, even if the jury based its verdict on both injuries, the wound in the hand and throat, and also the shot in the back, the amount of damages is not so small as would justify the court in reversing the judgment on that ground alone.

We shall dispose of appellee's contentions in the order named:

1. There was no evidence that the appellant was guilty of any contributory negligence. For one to be chargeable with negligence proximately contributing to his in-

jury, there must be open to him a reasonable opportunity of escaping injury. The surrounding facts and circumstances must be such as to afford a reasonable person the choice between the safe course and the unsafe course. He must have time and opportunity to think and exercise judgment and discretion. Taking the evidence, as to how the shooting took place as testified to by appellee's deputies, to be true, we are not able to see that it showed, or tended to show, that appellant failed to act with reasonable care for his own safety. The occasion was one of great excitement. Appellant's companion, Hendricks, had been shot to death. Appellant did not know whether to turn to the right or left, or retreat, in order to avoid great bodily harm or death. If, under such conditions and circumstances, in trying to save himself, he ran into the range of fire intended for Hendricks, can it be said, with any degree of reason, that he was guilty of contributory negligence? We think not.

2. Appellee is mistaken in the contention that appellant sued for two distinct injuries; namely, the wound in the hand and throat and also the shot in the back. Appellant's declaration, fairly interpreted, based the cause of action on the wound in the hand and throat, and not on the shot in the back while he was fleeing, fifty yards away. It is true the declaration sets out the fact that, as appellant fled, one of the deputies shot him in the back when he was about fifty yards away from the scene of the main tragedy; but it is evident that statement in the declaration was made only by way of giving the history of what occurred. The declaration does not allege that the appellant was wounded by that shot, and because thereof suffered mental and physical pain; and the evidence showed that, although the shot was fired in the commission of a tort against appellant, it resulted in no mental or physical pain or suffering for which he sought to recover damages.

3. The palm of appellant's hand and three of his fingers were shot away. And, by the same shot, he received a serious wound in his throat. The evidence showed that his physical and mental sufferings were great. He was maimed for life. He was shot without any provocation on his part, and, the jury by their verdict found, without any justification under the law.

For such an injury, a verdict of five hundred dollars was grossly inadequate. It is manifest that the jury, in assessing appellant's damages, were unduly influenced in favor of appellee and against appellant. To let such a verdict stand would be a miscarriage of justice.

Reversed and remanded for trial on the question of damages alone.

*Reversed and remanded.*